UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
June 13, 2019
David J. Bradley, Clerk

| | |
|---|---|
| US Bank National Trust Association, <br>             Plaintiff, <br><br> versus <br><br> Latonya Thompson, <br>             Defendant. | § § § § § § § § § § § |

Civil Action H-17-2452

## Opinion on Judgment

1.    *Background.*

In August 2004, Latonya Thompson, her husband Dejaun Henry, and the Mortgage Store Financial, Inc., concurrently signed a primary and secondary lien note and purchase money deeds of trust for each. The primary note was for $211,760. The secondary lien was a balloon-payment note with a principal of $52,940. Both deeds of trust gave the note's holder a security interest in the real property at 2023 Upland Shadows Drive, Sugar Land. Under both notes's default provision, the note holder could accelerate payment and make the full principal and interest immediately due if Thompson missed an installment. The note required Thompson to pay monthly from October 2004 until the note matured on September 1, 2019.

Thompson has not paid an installment since June 1, 2005. Thompson and Henry divorced in July 2005. In August 2005, the primary note holder sold the property at a foreclosure sale for $217,813.50. The secondary note holder was neither involved in the sale nor received any proceeds from it. Thompson was served with a writ of possession on September 7, 2005. Thompson lived in the property until she was evicted.

US Bank National Trust Association, as Trustee for Cornerstone Quarry 2010 A Trust, holds the secondary note. On May 23, 2016, US Bank mailed Thompson a notice of default. On September 23, 2016, US Bank mailed Thompson a notice of acceleration. The amount owed on the second note, excluding court costs and attorneys' fees, is $111,156.97.

2. *Note.*

To collect on the promissory note, US Bank must show that (a) it holds the note, (b) Thompson made the note, and (c) the note has not been paid.[1] Thompson says that she is not the note's maker. She is wrong.

When Thompson closed on the property, she simultaneously signed, and notarized, many documents. The primary and secondary notes and deeds of trust were some of these documents.

Texas presumes that signatures on a negotiable instrument are genuine. If a party denies the signature's validity then the party claiming validity must establish it. If validity is denied, the presumption that the signature is valid remains until evidence shows otherwise.

Thompson claims that her signature is a forgery. This is not enough to trump the presumption of validity. Thompson must show that her signature is invalid.

3. *Forgery.*

Thompson says that she did not sign the notes. She says that her signature was forged on the documents. Her evidence of forgery is that (a) the notary "is a criminal who pled guilty to tampering with a governmental document one year before the [notes] were allegedly signed" and that "in an attempt to conceal her criminal history, the notary changed the name under which her commission to be a notary was registered" and (b) the loan officer who negotiated the loan was Thompson's brother-in-law and "such behavior suggest there was a lack of objectivity and appearance of impropriety in the transaction."

To overcome the signature's validity, Texas requires "clear and unmistakable proof that either the grantor did not appear before the notary or that the notary practiced some fraud or imposition upon the grantor."[2] Thompson relies on her affidavit and the notary's probation papers to support her position. According to

---

[1] *See Alphaville Ventures, Inc. v. First Bank*, 429 S.W.3d 150, 152 (Tex. App. 2014); *see also Hitachi Capital Am. Corp. v. Med. Plaza Surgical Ctr., LL.P.*, No. CIV.A. 06-1959, 2007 WL 2752692, at *4 (S.D. Tex. Sept. 20, 2007).

[2] *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 338, 843 (Tex. App.–Dallas 2011, no pet.) (quoting *Bell v. Sharif-Munir-Davidson Dev. Corp.*, 738 S.W.2d 326, 330 (Tex. App.–Dallas 1987, writ denied)).

Thompson, the notary's alleged concealment is that she was originally commissioned as "Thelma Teran Keyes" on October 29, 1999, but was recommissioned on October 29, 2003, as "Thelma Keyes." Thompson imagines that Keyes removed her middle name from her registration because she pleaded guilty to tampering with a government record on June 17, 2003. However, her registration lasts for four years. She was first commissioned on October 29, 1999, and her license expired four years from that date, or October 29, 2003. While she did remove her middle name, when her recommissioned license expired on October 29, 2007, it was re-recommissioned without her middle name.

Thompson's affidavit says that she did not sign either note and that there was a conspiracy between her ex-husband, his brother, and Keyes to forge Thompson's signature. However, in a pretrial conference before this court, Thompson admitted that she signed the primary lien note, which was signed in the same transaction as the secondary lien note and notarized by Keyes.

That Thompson's brother-in-law was the loan officer is not illegal, nor is it close to being proof of fraud or forgery. Thompson was his sister-in-law and his brother was the co-debtor with Thompson.

Thompson's attempt to use character evidence is flawed. Keyes's criminal history is irrelevant to the question of whether her own signature is valid. The notary's criminal background, even coupled with the loan officer being Thompson's brother-in-law, is not clear and unmistakable proof that the signature is not hers.

4. *Conclusion.*

US Bank National Trust Association, as Trustee for Cornerstone Quarry 2010 A Trust, will recover the amount owed under the second lien note, including pre- and post-judgment interest, attorneys' fees, and court costs.

Signed on June 13, 2019, at Houston, Texas.

Lynn N. Hughes
United States District Judge